NATHANIEL A. WEISBROT (NW6029)
LAW OFFICE OF N. ARI WEISBROT LLC
1099 Allessandrini Avenue
New Milford, New Jersey 07646
(201) 788.6146
aweisbrot@weisbrotlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARA STERN, | CIVIL ACTION NO: 20-cv-1869 |
| Plaintiff, | Civil Action |
| vs. | |
| SETH LEVINE; AMBOY NORSE, LLC; CATHERINE NORSE, LLC; IRVINGTON NORSE, LLC; FILMORE NORSE, LLC; WASHINGTON NORSE, LLC; WOODBINE NORSE, LLC;  CLEMENTON NORSE, LLC; ATLANTIC NORSE, LLC; and ELIZABETH NORSE, LLC; | **COMPLAINT** |
| Defendants. | |

Plaintiff Sara Stern (hereinafter, "Plaintiff"), by way of Complaint against Defendants

Seth Levine; Amboy Norse, LLC; Catherine Norse, LLC; Irvington Norse, LLC; Filmore

Norse, LLC; Washington Norse, LLC; Woodbine Norse, LLC;  Clementon Norse, LLC;

Atlantic Norse, LLC; and Elizabeth Norse, LLC (collectively, "Defendants") allege and say

as follows:

## NATURE OF ACTION

1.     Plaintiff brings this Complaint to recover damages incurred as a result of the Defendants' complicated and extensive scheme through which they solicited and received from the Plaintiff millions of dollars in the form of investments and loans related to the acquisition of real estate properties. The Plaintiff made these investments based upon certain representations and warranties by Defendant Levine.  Those representations and warranties have proven false and Plaintiff's funds have been improperly misappropriated, diverted, and converted for Defendants' own gain leaving Plaintiff out more than $1.6 million without any assurances that her interests in the properties, in fact, exist.

2.     The real properties at issue in this action (the "Properties"), include:

   a.   337-339 Washington Street, Perth Amboy, New Jersey
   b.   1-12 Catherine Court, Jersey City, New Jersey
   c.   616 Lyons Avenue, Irvington New Jersey
   d.   204-212 60th Street, and 6008 Filmore Street, West New York, New Jersey
   e.   7 Railroad Avenue, Washington, New Jersey
   f.   300 Broadway, Westville, New Jersey
   g.   222 White Horse Pike, Clementon, New Jersey
   h.   225 Atlantic Avenue and 212 Atlantic Avenue, Atlantic City, New Jersey
   i.   157-163 West End Avenue, Elizabeth, New Jersey

3.     Plaintiff now brings this action alleging fraud, RICO violations, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment, and seek, among other things, the recovery of actual, compensatory, consequential, punitive and treble damages, and an accounting.

## PARTIES

4.     Plaintiff Sarah Stern ("Stern" or "Plaintiff") is an individual with a place of residence located at 1758 45th Street, Brooklyn New York 11204

5.     Upon information and belief, Defendant Seth Levine ("Levine") is an individual

2

with a place of residence located at 636 South Forest Drive, Teaneck, New Jersey 07646.

6.       Upon Information and belief, Defendant Amboy Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

7.       Upon Information and belief, Defendant Catherine Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

8.       Upon Information and belief, Defendant Irvington Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

9.       Upon Information and belief, Defendant Filmore Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

10.       Upon Information and belief, Defendant Washington Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

11.       Upon Information and belief, Defendant Woodbine Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

12.       Upon Information and belief, Defendant Clementon Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

13.       Upon Information and belief, Defendant Atlantic Norse, LLC is a New Jersey

Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

14.     Upon Information and belief, Defendant Elizabeth Norse, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

## <u>JURISDICTION AND VENUE</u>

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and, with respect to certain claims, 28 U.S.C. § 1367.

16.     This Court also has subject matter jurisdiction over this action, pursuant to the "minimal diversity" provision for a statutory interpleader case under 28 U.S.C. 1335, because at least two of the parties, who have or claim a right to and/or lien on and/or interest in the property that is the subject of this action, are citizens of different states.

17.     This Court has personal jurisdiction over the Defendants insofar as they reside in and/or conduct business in this State and in this district, and all of the Properties are located in New Jersey. Moreover, all of the transactions occurred in this district and the causes of action arose herein.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(l) and (2) because all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

## <u>THE INVESTMENTS</u>

**337-339 WASHINGTON STREET, PERTH AMBOY, NEW JERSEY**

19.     In or about March 2010,  Defendant Levine solicited the Plaintiff to lend money to Levine for the purposes of acquiring real property located at 337-339 Washington Street, Perth

Amboy, New Jersey. Levine caused to be formed an entity known as "Amboy Norse, LLC" for the purposes of acquiring and managing the property.

20.    Pursuant to a written mortgage note, Plaintiff loaned Levine $200,000.

21.    The note provided as follows:

> payable interest only at the rate of eight (8%) percent per annum, which shall be payable in equal monthly installments of One Thousand Three Hundred and Thirty-Three and 33/100ths Dollars ($1,333.33) each, commencing on the 18th day of April, 2010, and continuing on the first day of each month thereafter for one hundred and twenty (120) months, when all outstanding principal and accrued interest shall be due and payable.

22.    Levine made interest-only payments in the total amount of $119,999.67 through approximately January 2019.  No further or additional payments were made by Defendants or received by Plaintiff in connection with the loan, leaving a deficit of $$40,000 in interest payments plus the principal amount of $200,000, which remains due and owing.  In total, Levine owes $240,000 to Plaintiff on the Loan. Levine has ceased all communications with Plaintiff and has failed and refused to make any further payments in connection with the mortgage note.

23.    Levine is currently in default under the terms of the Mortgage note, with a current outstanding balance of $240,000, exclusive of legal fees and late fees.

## 1-12 CATHERINE COURT, JERSEY CITY, NEW JERSEY

24.    In or about May 2008, Defendant Levine solicited the Plaintiff to invest in real property located at 1-12 Catherine Court, Jersey City, New Jersey. Levine caused to be formed an entity known as "Catherine Norse, LLC" for the purposes of acquiring and managing the property.

25.    Plaintiff invested $143,000 (for a 15% interest). Defendant Levine claimed to have invested or raised the balance of the investment.

26.    The 1-12 Catherine transaction was fully funded and closed in or about May 2008.

27.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

## 616 LYONS AVENUE, IRVINGTON NEW JERSEY

28.     In or about 2006, Defendant Levine solicited the Plaintiff to invest in real property located at 616 Lyons Avenue, Irvington, New Jersey. Levine caused to be formed an entity known as "Irvington Norse, LLC" for the purposes of acquiring and managing the property.

29.     Plaintiff invested $106,500 (for a 10% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

30.     The 616 Lyons transaction was fully funded and closed in or about 2006.

31.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

## 204-212 60th STREET, AND 6008 FILMORE STREET, WEST NEW YORK, NJ

32.     In or about 2010, Defendant Levine solicited the Plaintiff to invest in real properties located at 204-212 60th Street and 6009 Filmore Street, West New York, New Jersey. Levine caused to be formed an entity known as "Filmore Norse, LLC" for the purposes of acquiring and managing the properties.

33.     Plaintiff invested $180,000 (for a 25% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

34.     The West  New York transactions were fully funded and closed in or about 2010.

35.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

## 7 RAILROAD AVENUE, WASHINGTON, NEW JERSEY

36.     In or about 2015, Defendant Levine solicited the Plaintiff to invest in real property

located at 7 Railroad Avenue, Washington, New Jersey. Levine caused to be formed an entity known as "Washington Norse, LLC" for the purposes of acquiring and managing the property.

37.     Plaintiff invested $220,000 (for a 50% interest). Defendant Levine claimed to have invested or raised the balance of the investment.

38.     The 7 Railroad transaction was fully funded and closed in 2010.

39.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

**300 BROADWAY, WESTVILLE, NEW JERSEY**

40.     In or about 2010, Defendant Levine solicited the Plaintiff to invest in real property located at 300 Broadway, Westville, New Jersey. Levine caused to be formed an entity known as "Woodbine Norse, LLC" for the purposes of acquiring and managing the property.

41.     Plaintiff invested $120,000 (for a 15% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

42.     The 300 Broadway transaction was fully funded and closed in or around 2010.

43.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

**222 WHITE HORSE PIKE, CLEMENTON, NEW JERSEY**

44.     In or about 2015, Defendant Levine solicited the Plaintiff to invest in real property located at 222 White Horse Pike, Clementon, New Jersey. Levine caused to be formed an entity known as "Clementon Norse, LLC" for the purposes of acquiring and managing the property.

45.     Plaintiff invested $150,000 (for a 20% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

46.     222 White Horse Pike transaction was fully funded and closed in or about 2015.

47.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

## 225 ATLANTIC AVENUE AND 212 ATLANTIC AVENUE, ATLANTIC CITY, NJ

48.     In or about 2015, Defendant Levine solicited the Plaintiff to invest in real properties located at 225 Atlantic Avenue and 212 Atlantic Avenue, Atlantic City, New Jersey. Levine caused to be formed an entity known as "Atlantic Norse, LLC" for the purposes of acquiring and managing the properties.

49.     Plaintiff invested $243,000 (for a 20% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

50.     The Atlantic City transactions were fully funded and closed in or about 2015.

51.     Levine prepared and circulated an Operating Agreement for the LLC, which, upon information and belief, was duly executed by its members.

## 157-163 WEST END AVENUE, ELIZABETH, NEW JERSEY

52.     In or about 2014, Defendant Levine solicited the Plaintiff to invest in real property located at 157-163 West End Avenue, Elizabeth, New Jersey.  Levine caused to be formed an entity known as "Elizabeth Norse, LLC" for the purposes of acquiring and managing the property.

53.     Plaintiff invested $108,500 (for a 10% interest).  Defendant Levine claimed to have invested or raised the balance of the investment.

54.     The Elizabeth transaction was fully funded and closed in or about 2015.

55.     In total,  the Plaintiff invested or loaned at least $1.6 million in the Defendants' real estate acquisitions. She has received dividends or distributions in a fractional amount of those loans/investments in return from Defendants. In totally, Plaintiff has lost approximately $1.4 million, exclusive of interest, late fees, promised distributions and profits, and collection fees.

## DEFENDANTS' MISCONDUCT

56.     Plaintiff has learned from other pleadings filed in related cases that (i) on or about August 16, 2019, a search warrant for offices operated by Levine and companies with which he is affiliated, including the property manager for the Properties was executed by agents of the Federal Bureau of Investigation (the "FBI"), and (ii) the search warrant was connected to a federal investigation of Levine and his companies.

57.     Plaintiff learned from other pleadings filed in related cases that, as of approximately August 22, 2019, Levine and his affiliated companies are no longer actively conducting business. Accordingly, each Defendant has abandoned its subject Property and has forsaken its obligation to manage such Property.

58.     Upon information and belief, and based upon information learned from pleadings in other cases, the Defendants do not have sufficient funds to make insurance payments, or are refusing to do so.

59.     Upon information and belief, and based upon several actions pending in this and other Courts, several loans relating to the Properties (and other properties purportedly owned by the Defendants) are in default and the subject of foreclosure proceedings.

60.     Plaintiff is unable to obtain any information about the Properties or their investments.

61.     Upon information and belief, and based upon several actions pending in this and other Courts, as of August 22, 2019, Levine and the Defendants are no longer conducting business and the LLC defendants have abandoned the Properties and their management obligations.

62.     The actions by the Defendants, as set forth herein, constitute significant and material breaches of the Operating Agreements and mortgage note, which have caused, and will

continue to cause, significant and irreparable damage to the Plaintiff.

63.     In addition, Levine on at least one occasion, but likely more than once, applied for and obtained a loan by using one of the Properties as collateral, without the consent of Plaintiff and without  providing Plaintiff with any of the proceeds from those loans.  Indeed, upon information and belief, Levine has converted loan and refinancing proceeds for himself.

64.     Upon information and belief, Levine also fraudulently pledged his "100%" interests in other properties in which he did not own 100% and, in which, other investors had acquired significant membership interests.

65.     During the last several [years],  Plaintiff has not received most, if any, of her distributions, income or payments, as required by the operating agreements, and the other promises and understanding between the parties.   In effect, it seems that Levine has simply converted those distributions for his own use, or to repay other investors. While Plaintiff received some checks in connection with some distributions on some investments, most have not been paid.

66.     Moreover, certain Form K-1s were issued by Levine that were clearly erroneous. K-1s included distributions that were not issued. At least one distribution check, disclosed on the K-1s, could not be cashed due to insufficient funds. Yet, the K-1s continued to falsely represent that distributions were made. Those distributions remain due and owing.

67.     While some "payments" were, in fact, paid to and received by Plaintiff on occasion (and those amounts will be deducted from Plaintiff's ultimate award of damages), it is simply impossible to know the manner in which revenue, distributions, or proceeds were allocated or distributed by the Defendants.  At least one check bounced and was never replaced.

68.     With respect to several investments, Levine purported to finance or refinance the properties but failed to distribute the proceeds to Plaintiff. Those funds are unaccounted for.

## FIRST  COUNT
## (Civil RICO -18 U.S.C. 1962 (c))

69.     Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

70.     Defendants violated 18 U.S.C. §§ 1962(a) and 1962(d) by (i) receiving income from a pattern of racketeering, (ii) using such income to acquire and/or operate an interest in an enterprise, (iii) where such enterprise affects interstate and foreign commerce.

71.     As described above, the Defendants engaged in two or more predicate acts within ten years which constitute the Defendants' pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(a) and 1962(d). The scheme to fraudulently obtain and convert funds from Plaintiff was perpetrated through wire fraud violations under 18 U.S.C. § 1343, mail fraud violations under 18 U.S.C. § 1341, and bank fraud violations under 18 U.S.C. 1344.

72.     Specifically, as set forth above in detail, each Defendant sent, through the U.S. Mail and by interstate wire, solicitations for the investments, checks that were known to have insufficient funds and would be rejected, and false information regarding the properties. Moreover, Defendant Levine falsely advised several banks and lenders that he was the 100% member of several of the properties in order to obtain financing.  Levine submitting knowingly false documents to banks and lenders in connection with such financing applications.

73.     Defendant Levine was the mastermind of the schemes set forth above and effectuated their activities by conspiring with the LLC Defendants to drain funds from Plaintiff. Levine structured transactions in which over $1.6 million dollars were taken from Plaintiff and transferred into the entities which owned the Properties as well as other assets, entities owned and controlled by Defendants. Levine also directed the wrongful activities of the other Defendants.

74.     Defendants' various real estate investment companies comprise an enterprise

under the federal RICO statutes.

75.     Thus, Defendants invested and used income and proceeds generated from a pattern of racketeering activity in the operation of an enterprise in violation of 18 U.S.C. §§ 1962(d).

76.     Plaintiff was directly injured by Defendants' violations of the federal RICO statute and the predicate acts. Specifically, Plaintiff were injured directly by Defendants' fraudulent inducement to invest and loan moneys that were used to fund Defendants' real estate investment enterprise.

77.     As a result of those injuries, Plaintiff have sustained damages.

## SECOND COUNT
### (Conspiracy to Violate Civil RICO-18 U.S.C. 1962 (d))

78.     Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

79.     In violation of 18 U.S.C. § 1962(d), the Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.

80.     The conspiracy commenced at least as early as 2006 and is ongoing.

81.     The conspiracy's purpose was to divert money from Plaintiff to their own benefit by using mail and wire to solicit multiple "investments" in property that either was not lawfully owned by the Defendants or which was sold by the Defendants to multiple parties.

82.     Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included misleading Plaintiff as to the value of the investment properties, the ability to flip them or obtain financing, and the terms and condition of purchase, all of which were reinforced and defended by Levine in separate

conversations with Plaintiff. All defendants received monies from the funds invested by Plaintiff, all the while making it seem as though the funds were legitimately being used to finance the purchase and development of the Properties.

83.     Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

84.      Plaintiff has been injured and continues to be injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. $ 1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in her business or property. Plaintiff seeks an award of damages in compensation for. among other things, the millions of dollars that Defendants stole from Plaintiff. Plaintiff further seeks an award of three times the damages she sustained, and the recovery of reasonable attorney's fees and costs of investigation and litigation, as well as any other relief as authorized.

## THIRD COUNT
### (Equitable Accounting)

85.     Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

86.     The oral and written contracts between Plaintiff and Defendants involve extensive and complicated accounts and transactions.

87.     Each Operating Agreement for each investment includes the following provision:

> Maintenance of Books. The Company shall keep books and records of accounts, shall keep minutes of the proceedings of its Members, and shall keep such other books and records as provided by the Act and as the Company may deem necessary or advisable. Such books and records shall be subject to the inspection of any Member.

88.     Plaintiff has made various requests for information regarding the Defendants' activities with regard to these transactions, all of which have been refused.

89.     To date, Defendants have refused or have been unable to account for any of Plaintiff's loans and/or investments and have refused to demonstrate how the money was used.

90.     There is no remedy at law that would resolve this issue as fully, adequately or expeditiously as an accounting.

## FOURTH COUNT
### (Fraud)

91.     Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

92.     As set forth in detail above, and incorporated into this Count by reference, Defendants made fraudulent misrepresentations and/or omissions of material fact.

93.     Defendants knew or should have known that their statements were false when made.

94.     Defendants intended to deceive Plaintiff with the misrepresentations and omissions and induce Plaintiff to act to her detriment by continuing to invest substantial funds with Defendants and to loan money to Defendants and to forebear on their rights upon disclosure of the substantial fraud committed by Defendants.

95.     Plaintiff had no knowledge of the falsity of the Defendants' representations and omissions and reasonably relied on the Defendants' misrepresentations to her detriment.

96.     As a result of Defendants' fraud and misrepresentation, Plaintiff was damaged in an amount to be determined at trial but in no event less than $2 million.

## FIFTH COUNT
### (Breach of Fiduciary Duty Against Levine)

97.     Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

98.     During the course of their business dealings, Plaintiff reposed confidence in Levine to guide and inform her with respect to real estate projects and Levine accepted this trust. Levine also owed a fiduciary duty to Plaintiff as a managing member of the investment LLC, as described above.

99.     As a result, Defendant Levine and Plaintiff had an implied fiduciary relationship pursuant to which Levine owed Plaintiff a fiduciary duty.

100.    Pursuant to that fiduciary duty, Levine also had a duty of loyalty, and was required to refrain from self-dealing and from taking unfair advantage. He was also required to disclose all material facts and act in Plaintiff's best interest.

101.    Instead, Levine exploited Plaintiff's trust by defrauding her.

102.    Accordingly, Levine breached his fiduciary duty causing the Plaintiff to suffer damages.

## SIXTH COUNT
### (Conversion)

103.    Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

104.    Defendants received Plaintiff's funds based on false statements.

105.    The funds were earmarked to fund the purchase of specific properties.

106.    Defendants wrongfully exercised dominion and control over the funds.

107.    Despite repeated requests, Defendants have refused to return the funds and have

improperly converted them for their own use causing damage to Plaintiff.

## SEVENTH COUNT
## (Unjust Enrichment)

108.    Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

109.    Plaintiff transferred at least $1.6 million to Defendants and thus conferred a benefit upon them.

110.    The Defendants voluntarily requested and received all such funds under false pretenses and improperly exercised dominion and control over those funds.

111.    Under the circumstances, it would be inequitable for Defendants to continue to retain Plaintiff's funds and the properties or assets acquired therewith.

## EIGHTH COUNT
## (Breach of Contract)

112.    Plaintiff repeats and re-alleges the foregoing allegations as if more fully set forth at length herein.

113.    The Operating Agreements and mortgage note are enforceable contracts between Plaintiff and Defendants.

114.    The mortgage note requires Defendants to make monthly interest payments, through the maturity date of the loan, at which time the principal would also be due. Defendants breached the note by failing and refusing to make the required interest or principal payments.  To date, Defendants paid $120,000, leaving a balance of $240,000 - - exclusive of late fees and collection fees.

115.    The Operating Agreements require the Defendants to maintain and manage the Properties and to protect Plaintiff's investments.

116.     Each Operating Agreement for each investment includes the following provision:

Liability for Certain Acts. The Manager shall perform his managerial duties in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

117.     Each Operating Agreement makes Levine liable for any and all damages that are the result of fraud, deceit, gross negligence, willful misconduct, breach of fiduciary duty, or a wrongful taking by Levine.

118.     The Defendants have abandoned the Properties, failed to maintain or manage the Properties, allowed the Properties to default on their loans and mortgages, obtained improper and unauthorized financing and loans secured by the Properties but diverted and converted the loan proceeds for themselves, to the exclusion of Plaintiff's rights and interests.

119.     Moreover, the Defendants have ceased conducting its property management duties as to the Properties.

120.     Moreover, Defendants have ceased making the required distributions to the Plaintiff and appear to have converted those funds.

121.     These actions constitute material and significant breaches by the Defendants of the Operating Agreements.

122.     The material breaches of Contract by the Defendants have caused and shall continue to cause, substantial and irreparable damage to the Plaintiff and her investments, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Sara Stern, respectfully requests that this Court issue the following relief with respect to the Defendants:

a. Declare that the Operating Agreements and mortgage note have been breached;

b. An award of compensatory damages, punitive damages and attorney's fees and costs; and

c. Such additional and further relief as the Court may deem just and equitable.

LAW OFFICE OF N. ARI WEISBROT LLC

By: _____
     N. Ari Weisbrot, Esq.

1099 Allessandrini Avenue
New Milford, New Jersey 07646
(201) 788.6146
aweisbrot@weisbrotlaw.com
*Attorneys for Plaintiff*

Dated: February 21, 2020