**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SARA STERN,**<br>*Plaintiff,*<br>**v.**<br>**SETH LEVINE, et al.,**<br>*Defendants.* | **Civil Action No. 20-1869**<br>**ORDER** |

**THIS MATTER** comes before the Court by way of Plaintiff Sara Stern's ("Plaintiff") unopposed Motion for the Entry of Default Judgment,[1] ECF No. 17, against Defendants Seth Levine ("Levine"), Amboy Norse, LLC ("Amboy LLC"), Catherine Norse, LLC ("Catherine LLC"), Irvington Norse, LLC ("Irvington LLC"), Filmore Norse, LLC ("Filmore LLC"), Washington Norse, LLC ("Washington LLC"), Woodbine Norse, LLC ("Woodbine LLC"), Clementon Norse, LLC ("Clementon LLC"), Atlantic Norse, LLC ("Atlantic LLC"), and Elizabeth Norse, LLC ("Elizabeth LLC") (collectively, "Defendants");

and it appearing that this action arises out of an alleged scheme to defraud real estate investors perpetrated by Defendants, see generally Compl., ECF No. 1;

and it appearing that Plaintiff lent $200,000 to Levine pursuant to a mortgage note for the purpose of acquiring real property in Perth Amboy, New Jersey through Amboy LLC (the "Amboy Note"), id. ¶¶ 19-21;

and it appearing that Levine made interest-only payments on the Amboy Note until January 2019, at which point Levine ceased payments, id. ¶ 22;

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

and it appearing that Levine has defaulted on the Amboy Note and currently owes $240,000 in principal and interest, id. ¶¶ 22-23;

and it appearing that separately, Levine solicited Plaintiff to invest in real property through a series of LLCs formed by Levine (the "Investment LLCs"), id. ¶¶ 24, 28, 32, 36, 40, 44, 48, 52;

and it appearing that Stern invested (1) $143,000 in Catherine LLC, which purchased property in Jersey City, NJ in May 2008, id. ¶¶ 24-26; (2) $106,500 in Irvington LLC, which purchased property in Irvington, NJ in 2006, id. ¶¶ 28-30; (3) $180,000 in Filmore LLC, which purchased property in West New York, NJ in 2010, id. ¶¶ 32-34; (4) $220,000 in Washington LLC, which purchased property in Washington, NJ in 2010, id. ¶¶ 36-38; (5) $120,000 in Woodbine LLC, which purchased property in Westville, NJ in 2010, id. ¶¶ 40-42; (6) $150,000 in Clementon LLC, which purchased property in Clementon, NJ in 2015, id. ¶¶ 44-46; (7) $243,000 in Atlantic LLC, which purchased property in Atlantic City, NJ in 2015, id. ¶¶ 48-50; and (8) $108,500 in Elizabeth LLC, which purchased property in Elizabeth, NJ in 2015, id. ¶¶ 52-54;

and it appearing that Catherine LLC, Irvington LLC, Filmore LLC, Washington LLC, Woodbine LLC, Clementon LLC, and Atlantic LLC, were each governed by an operating agreement prepared by Levine (the "Operating Agreements"), id. ¶¶ 27, 31, 35, 39, 43, 47, 51, all of which allegedly provided, inter alia, that (a) Defendants were required to maintain and manage the subject properties (the "Properties"), id. ¶ 115; and (b) Plaintiff was to receive certain distributions from each LLC, id. ¶ 65;

and it appearing that Plaintiff alleges that Defendants have failed to make certain distributions required by the Operating Agreements, id. ¶ 65;

and it appearing that as of approximately August 22, 2019, Defendants have abandoned their obligation to manage the Properties, have ceased making insurance payments related to the Properties, and have defaulted on several loans related to the Properties, id. ¶¶ 57-61;

and it appearing that on February 21, 2020, Plaintiff filed the eight-count Complaint alleging (1) a violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), id. ¶¶ 69-77 ("Count I"); (2) conspiracy to violate RICO, id. ¶¶ 78-84 ("Count II"); (3) equitable accounting, id. ¶¶ 85-90 ("Count III"); (4) fraud, id. ¶¶ 91-96 ("Count IV"); (5) breach of fiduciary duty, id. ¶¶ 97-102 ("Count V"); (6) conversion, id. ¶¶ 103-107 ("Count VI"); (7) unjust enrichment, id. ¶¶ 108-111 ("Count VII"); and (8) breach of contract, id. ¶¶ 112-122 ("Count VIII");

and it appearing that as of the date of this Order, Defendants have failed to answer or otherwise respond to the Complaint;

and it appearing that on September 17, 2020, the Clerk of Court entered default against Defendants;

and it appearing that, before entering a default judgment, the Court must determine whether it has jurisdiction over the action and the parties, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008), and whether Plaintiff properly served Defendants, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the Complaint alleges a violation of RICO;

and it appearing that the Court has personal jurisdiction over Defendants because all Defendants are domiciled, organized, or have their principal place of business in New Jersey,

Compl. ¶¶ 5-14; see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011);

and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1);

and it appearing that Defendants have acknowledged service of the Summons and Complaint, see ECF No. 6;

and it appearing that before entering a default judgment, a court must also determine whether the plaintiff's complaint sufficiently pleads a cause of action and whether the plaintiff has proved damages, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing that Plaintiffs now move for default judgment on, inter alia, Counts IV (fraud), VI (conversion), and VIII (breach of contract), Pl. Mem. at 1, ECF No. 17.1;

and it appearing that Count IV alleges that Defendants defrauded Plaintiffs by inducing them to make investments in reliance on material "misrepresentations and/or omissions," Compl. ¶¶ 92-96;

and it appearing that "[t]he elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages," Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (citation and quotation marks omitted);[2]

and it appearing that while Plaintiff does not clearly indicate which misrepresentations or omissions form the basis of her fraud claim, the Complaint alleges that Defendants defrauded Plaintiffs by failing to make distributions, as promised in the Operating Agreements, Compl. ¶ 65;

[2] Federal Rule of Civil of Procedure 9(b) requires fraud claims to be pled with particularity. A plaintiff must specify "the date, place or time of the fraud," "who made a misrepresentation to whom," and "the general content of the misrepresentation," Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008) (citation and quotation marks omitted).

and it appearing that New Jersey's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract," Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (citing Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995)); see also id. at 546 (explaining that the "critical issue" in determining whether a tort claim may proceed alongside a contract claim is "whether the allegedly tortious conduct is extraneous to the contract");

and it appearing that the economic loss doctrine bars Count IV because Plaintiff's fraud claim arises solely from Levine's alleged failure to honor his contractual promises to make distributions, see, e.g., id. at 564 (holding that the economic loss doctrine prohibits fraud claims based on the breach of a contractual promise or fraud in the performance of a contract);[3]

and it appearing that Count VI alleges that Defendants converted funds received from Plaintiff that were "earmarked to fund the purchase of specific properties," id. ¶¶ 104-107;

and it appearing that to state a claim for common law conversion, a plaintiff must allege "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant," Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (citation and quotation marks omitted);

and it appearing that with regards to the earmarked funds, the Complaint alleges only that (1) Plaintiff invested funds in the Investment LLCs for the purpose of purchasing specific real property, Compl. ¶ 105; (2) Plaintiff received certain interests in the Investments LLCs, id. ¶¶ 25,

[3] The Complaint fails to specifically plead any other actionable misrepresentations. For example, while Plaintiffs allege that Levine "claimed" that he invested in the Defendant LLCs, e.g., Compl. ¶¶ 25, 29, Plaintiffs do not allege that these claims were false or that they induced Plaintiffs to invest. Moreover, to the extent Plaintiffs seek to assert a fraud claim based on representations in the Operating Agreements related to the management of the LLCs or representations in the Amboy Note, such claims are similarly barred by the economic loss doctrine.

29, 33, 37, 41, 45, 49, 53; and (3) the Investment LLCs successfully purchased the Properties, id. ¶¶ 26, 30, 34, 38, 42, 46, 50, 54;

and it appearing that Plaintiff has failed to plead any facts showing that Defendants "wrongfully interfered" with the earmarked funds;[4]

and it appearing that Count VI therefore fails to plausibly allege conversion;

and it appearing that Count VIII alleges that (a) Defendants breached the Amboy Note by failing to repay the subject loan principal and interest; and (b) Defendants breached the Operating Agreements by failing to manage the Properties or pay distributions to Plaintiff, Compl. ¶¶ 113-122;

and it appearing that to state a claim for breach of contract, a plaintiff must allege (1) "a valid contract between the parties," (2) "the opposing party's failure to perform a defined obligation under the contract," and (3) "the breach caused the claimant to sustained damages," EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015) (citation omitted);

and it appearing that with regards to the Amboy Note, Plaintiff alleges that (1) the Amboy Note is an enforceable agreement between Plaintiff and Levine, Compl. ¶¶ 20, 113; (2) the Amboy Note required Levine to repay outstanding principal, along with interest at the rate of eight percent per annum, id. ¶¶ 20-21; and (3) Levine ceased making payments on the Amboy Note in January 2019 and currently owes $240,000 in principal and interest, id. ¶¶ 22-23;

and it appearing that Count VIII thus sufficiently pleads a claim for breach of the Amboy Note;

[4] For example, Plaintiff does not allege that Defendants diverted the earmarked funds for other uses. Rather, the Complaint appears to allege that the funds invested by Plaintiff were, in fact, used to purchase the Properties. See Compl. ¶¶ 26, 30, 34, 38, 42, 46, 50, 54. Count VI does not assert a claim for conversion related to Defendants' alleged failure to pay distributions. See Compl. ¶¶ 103-07.

and it appearing that with regards to the Operating Agreements, Plaintiff alleges that (1) the Operating Agreements were valid contracts between Plaintiff and Levine, Compl. ¶ 113;[5] (2) the Operating Agreements required Levine, as managing member of each LLC, to (a) maintain and manage the Properties, id. ¶¶ 115-116, and (b) make undisclosed distributions to Plaintiff, id. ¶ 65; and (3) Levine breached the Operating Agreements and caused damage to Plaintiff by failing to manage the Properties or make distributions, id. ¶¶ 22, 55, 57-61, 65, 118-120;

and it appearing that Count VIII therefore sufficiently pleads a claim for breach of the Operating Agreements;[6]

and it appearing that although the Court accepts the facts pled in the Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that Plaintiff seeks default judgment in the amount of $1,511,000, see Pl.'s Mem. at 15-16, ECF No. 17.1;

and it appearing that Plaintiff has submitted a declaration in support of the Motion, see ECF No. 17.3 ("Stern Decl.");[7]

and it appearing that with respect to the Amboy Note, Plaintiff reiterates allegations in the Complaint that Levine has paid $119,999.67 in interest to date and currently owes $200,000.00 in

[5] The Complaint does not adequately allege that the Investment LLCs were parties to the Operating Agreements. Plaintiff's well-pled allegations indicate only that for each LLC, "Levine prepared and circulated an Operating Agreement . . . which was duly executed by its members." See Compl. ¶¶ 27, 31, 35, 38, 43, 47, 51.

[6] Plaintiff also moves for default judgment on Count V (breach of fiduciary duty), which is asserted solely against Levine. Because Plaintiff has stated a claim for breach of contract against Levine and seeks identical relief for Counts V and VIII, the Court need not determine whether Plaintiff has adequately stated a claim for breach of fiduciary duty.

[7] Plaintiff's declaration appears to be simply a carbon copy of the factual allegations in the Complaint. It includes many statements made "upon information and belief" without any indication of how Plaintiff became aware of such conduct. Any renewed motion for default judgment must be accompanied by declarations or other proof demonstrating the specific facts supporting Plaintiff's claim to damages.

principal and $40,000.00 in interest, id. ¶¶ 20-21, but Plaintiff does not adequately explain how she calculated the alleged outstanding interest;

and it appearing that Plaintiff further seeks damages arising from Levine's failure to manage the Properties or make distributions, but Plaintiff has not quantified the distributions owed under the Operating Agreements[8] or explained how Levine's failure to manage the Properties damaged Plaintiff;

and it appearing that Plaintiff avers that in addition to the $119,999.67 she received in interest payments on the Amboy Note, Plaintiff received undisclosed other payments from Defendants and concedes that "those amounts will be deducted from Plaintiff's ultimate award of damages," id. ¶ 65;

and it appearing that Plaintiff has not provided the dollar amount she received, rendering the Court unable to calculate a damages award;

and it appearing that Plaintiff has therefore failed to satisfy her burden to prove damages, see, e.g., Gen. Elec. Cap. Corp. v. Automated Digital Consultants, Inc., No. 15-1682, 2016 WL 756559, at *2 (D.N.J. Feb. 25, 2016) ("[T]he Court cannot determine the accuracy of the claimed damages amount with any reasonable certainty, and therefore is not satisfied that default judgment is appropriate.");

**IT IS** on this 30th day of August, 2021,

**ORDERED** that Plaintiff's Motion for Default Judgment, ECF No. 17, is **DENIED WITHOUT PREJUDICE**; and it is further

[8] Plaintiff's declaration asserts only that Plaintiff "invested or loaned at least $1.6 million" and "lost approximately $1.4 million." Stern Decl ¶ 53. Nowhere does Plaintiff specify the distributions owed under the Operating Agreements, and Plaintiff has not submitted the Operating Agreements themselves.

**ORDERED** that Plaintiff may file a renewed motion for default judgment providing proof of damages within thirty (30) days of this Order.

***/s Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**